**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AMERICAN ALLIANCE FOR EQUAL RIGHTS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNIVERSITY OF TEXAS AT AUSTIN, et al.,**<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CASE NO. 1:25-CV-00596** |

**<u>DEFENDANTS' 12(b)(1) MOTION FOR PARTIAL DISMISSAL</u>**

This case is a challenge to the scope of a data collection effort by UT Austin researchers that concluded before the suit was filed. Under a National Science Foundation ("NSF") funding award (the "Award") for research into experiences of Black STEM students, the researchers had collected data by conducting focus groups of that cohort. But on April 18, 2025, the NSF terminated the Award. As a result, the focus groups ceased, and no further focus groups have been or will be conducted.

Three days *after* the NSF terminated the Award, the American Alliance for Equal Rights ("AAER") filed this lawsuit. AAER claims that by limiting the focus groups to Black STEM students, Defendants violated the Equal Protection Clause, Section 1981, and Title VI. The Court should dismiss all of these claims, save a Title VI claim seeking nominal damages of $1, because they are moot now that the complained-of data collection has ceased and because AAER lacks standing to obtain the requested declaratory and injunctive relief. While an unidentified member of AAER wishes to participate in a focus group, forcing the investigators to reopen data collection and redo focus groups is retrospective relief this Court cannot constitutionally provide. Moreover, the UT System Chancellor and Board of Regents are not proper defendants under *Ex Parte Young*, as they have no connection to the study or oversight of individual research projects at UT Austin.

## Table of Contents

**I. SUMMARY OF ARGUMENTS ........................................................................ 1**

**II. FACTUAL BACKGROUND ............................................................................ 3**

A. UT Austin Is a Leading Research University. ............................................ 3

B. The NSF Funds the UT Study and Then Terminates the Award. ................... 3

C. AAER Brings Suit, Alleging an Unidentified Member Was Barred from Participating in a UT Study Focus Group. ............................................................ 5

**III. STANDARD OF REVIEW ........................................................................ 5**

**IV. ARGUMENTS AND AUTHORITIES ............................................................ 6**

A. Sovereign Immunity Bars AAER's Claims Against the UT System Officials and the § 1981 Claim Against UT Austin. ............................................................ 7

B. The AAER's Claims for Prospective Declaratory and Injunctive Relief Are Moot. ................ 11

C. AAER Lacks Standing for Any Remaining Claims for Declaratory and Injunctive Relief. ...... 16

1. Any Relief Beyond the Complained-Of Data Collection Would Not Redress a Concrete or Particularized Injury. ............................................................ 17

2. AAER's Request for New Data Collection Exceeds the Scope of Available Relief. ........... 18

**V. CONCLUSION .......................................................................................... 20**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilar v. Tex. Dep't of Crim. Just.*,
160 F.3d 1052 (5th Cir. 1998) ....................7

*Alexander v. Trump*,
753 F. App'x 201 (5th Cir. 2018) (per curiam) ....................9

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................12

*Amawi v. Paxton*,
956 F.3d 816 (5th Cir. 2020) ....................14

*American Alliance for Equal Rights v. Founder's First Community Development Corp.*, No. 4:24-CV-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024)....................7

*Buchanan v. Alexander*,
919 F.3d 847 (5th Cir. 2019) ....................19

*Burnett Specialists v. Cowen*,
140 F.4th 686 (5th Cir. 2025) ....................5

*Cell Sci. Sys. Corp. v. La. Health Serv.*,
804 F. App'x 260 (5th Cir. 2020) (per curiam) ....................5

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ....................7, 8, 11

*Coal. For Ind. Tech. Rsch. v. Abbott*,
706 F. Supp. 3d 673 (W.D. Tex. 2023)....................19

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
704 F.3d 413 (5th Cir. 2013) ....................11, 12

*Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*,
938 F.3d 533 (5th Cir. 2019) ....................17

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998)....................20

*Dailey v. Vought Aircraft Co.*,
141 F.3d 224 (5th Cir. 1998) ....................12, 16

*Donelon v. La. Div. of Admin. Law*,
522 F.3d 564 (5th Cir. 2008) ....................17

*Dow Chem. Co. v. Allen*,
672 F.2d 1262 (7th Cir. 1982) ....................19, 20

*Escamila v. Elliott*,
816 F. App'x 919 (5th Cir. 2020) (per curiam) ....................7

*Freedom from Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ....................11

*Freedom from Religion Found., Inc. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) ....................14

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....................19

*Gean v. Hattawway*,
330 F.3d 758 (6th Cir. 2003) ....................14

*Green v. Mansour*,
474 U.S. 64 (1985)....................14

*Haggard v. Bank of the Ozarks*,
547 F. App'x 616 (5th Cir. 2013) (per curiam) ....................14

*Harris v. City of Hous.*,
151 F.3d 186 (5th Cir. 1998) ....................14

*Holmes v. Drug Enf't Admin.*,
512 F. Supp. 2d 826 (W.D. Tex. 2007)....................5

*In re Abbott*,
956 F.3d 696 (5th Cir. 2020) ....................8

*Jackson v. Wright*,
82 F.4th 362 (5th Cir. 2023) ....................10

*James v. Hegar*,
86 F.4th 1076 (5th Cir. 2023) ....................17

*Keyishian v. Bd. of Regents*,
385 U.S. 589 (1967)....................19

*Local 8027 v. Edelblut*,
651 F. Supp. 3d 444 (N.H.D. 2023)....................19

*Lopez v. City of Hous.*,
617 F.3d 336 (5th Cir. 2010) ....................12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....11

*Malik v. U.S. Dep't of Homeland Sec.*,
78 F.4th 191 (5th Cir. 2023) ....13

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ....19, 20

*Moore v. Univ. of Miss. Med Ctr.*,
719 F. App'x 381 (5th Cir. 2018) ....7, 11

*Motient Corp. v. Dondero*,
529 F.3d 532 (5th Cir. 2008) ....12

*NetChoice, L.L.C. v. Fitch*,
134 F.4th 799 (5th Cir. 2025) ....17

*Parr v. Cougle*,
127 F.4th 967 (5th Cir. 2025) ....18

*Patel v. Midland Mem'l. Hosp. & Med. Ctr.*,
298 F.3d 333 (5th Cir. 2002) ....7

*Pennhurst State Sch. and Hosp. v. Halderman*,
465 U.S. 89 (1984)....7

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....6

*Reule v. Jackson*,
114 F.4th 360 (5th Cir. 2024) ....16, 17

*Rowan Court Subdivision 2013 Ltd. P'ship v. La. Housing Corp.*,
749 F. App'x 234 (5th Cir. 2018) ....14

*Shaikh v. Tex. A&M Univ. Coll. of Med.*,
739 F. App'x 215 (5th Cir. 2018) (per curiam) ....5

*Shemwell v. City of McKinney*,
63 F.4th 480 (5th Cir. 2023) ....5

*Shott v. Katz*,
829 F.3d 494 (7th Cir. 2016) ....19

*Sissom v. Univ. of Tex. High Sch.*,
927 F.3d 343 (5th Cir. 2019) ....8, 11

*Tex. Office of Pub. Util. Couns. v. FCC*,
183 F.3d 393 (5th Cir. 1999) ....................11

*Twin Cities Safety, LLC v. Moe*,
139 F.4th 1015 (8th Cir. 2025) ....................15, 16

*U.S. Navy Seals v. Biden*,
72 F.4th 666 (5th Cir. 2023) ....................15

*United States v. Abbott*,
85 F.4th 328 (5th Cir. 2023) ....................14

*Vance v. Bd. of Supervisors of S. Univ.*,
No. 96-2196, 1996 WL 580905 (E.D. La. Oct. 9, 1996) ....................19

*Warnock v. Pecos Cnty.*,
88 F.3d 341 (5th Cir. 1996) ....................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(1) ....................2, 5, 7, 11

Federal Rule of Civil Procedure 25(d) ....................2

UT System Regents Rule 10101 ....................9

UT System Regents Rule 20101 ....................9

UT System Regents Rule 20201 ....................10

UT System Regents Rule 31004 ....................9, 11

## I. SUMMARY OF ARGUMENTS

On or about August 23, 2022, the NSF awarded Defendant The University of Texas at Austin ("UT Austin") the Award to fund a study examining the ways differing ethnic, geographical, and cultural identities may inform Black undergraduates' experiences in STEM education (the "UT Study"). As part of the UT Study's data-collection process, Defendants Dr. Tia C. Madkins and Dr. Yasmiyn Irizarry, both professors at UT Austin, invited Texas undergraduate students, who identified as Black and were in a Science, Technology, Engineering, and Mathematics ("STEM") field, to participate in a focus group in exchange for a $40 gift card. Approximately 123 Black STEM students participated in focus groups related to the UT Study.

On April 18, 2025, the NSF terminated the Award. As a result, Dr. Madkins and Dr. Irizarry have not, and will not, conduct any more of the focus groups or accompanying eligibility surveys as part of the UT Study.

On April 21, 2025, AAER filed this lawsuit on behalf of an unidentified member of its organization ("Member A"). AAER alleges that due to his race, Member A was excluded from finishing the eligibility survey that allowed students to sign up for one of the UT Study's focus groups and from participating in a focus group in exchange for a gift card. Despite the fact that this allegedly discriminatory conduct has ceased, AAER now brings this suit against UT Austin, UT Austin's President, and the two UT Austin faculty members who conducted the UT Study, in their official capacities (the "UT Austin Officials"), as well as the members of The University of Texas System ("UT System") Board of Regents and the UT System Chancellor, in their official capacities (the "UT System Officials").[1] AAER alleges three specific claims: (1) a Fourteenth Amendment Equal

[1] The UT System Board of Regents includes Defendants Christina Melton Crain, Jodie Lee Jiles, Kelcy L. Warren, Kevin P. Eltife, Dr. Nolan Perez, Stuart W. Stedman, Janiece Longoria, James C. "Rad" Weaver, and Robert P. Gauntt. Defendant James B. Milliken is the former UT System Chancellor. To the extent the official capacity claims survive against the UT System Chancellor, Defendants request the caption be updated to reflect current Chancellor John Zerwas.

Protection claim against the UT Austin Officials and UT System Officials under 42 U.S.C. § 1983; (2) a 42 U.S.C. § 1981 claim against UT Austin, the UT Austin Officials, and the UT System Officials; and (3) a Title VI claim against UT Austin. AAER seeks declaratory relief, injunctive relief, nominal damages, and attorneys' fees and costs.

Defendants hereby move for a partial dismissal of AAER's claims pursuant to Federal Rule of Civil Procedure 12(b)(1).

First, AAER's claims against the UT System Officials[2] are barred by sovereign immunity, as the UT System Officials have no connection to, or control over, the alleged discriminatory conduct in this case.

Second, AAER's claims under the Equal Protection clause and § 1981 seeking declaratory and injunctive relief are moot due to the NSF's termination of funding for the Award and the resulting cessation of the complained-of data collection in the UT Study relied on by AAER. And to the extent AAER asserts a § 1981 claim against UT Austin directly, that claim is barred by sovereign immunity.

Third, even if there was some basis to conclude that AAER or its members were facing ongoing harm, AAER lacks standing to seek any additional declaratory or injunctive relief, as any relief dictating Defendants' conduct beyond the eligibility surveys and focus groups would not address a concrete or particularized injury and would violate academic freedom in the core area of research.

Accordingly, Defendants respectfully request that the Court (1) dismiss the UT System Officials; (2) dismiss AAER's Equal Protection, § 1981, and Title VI claims for injunctive and declaratory relief related to past data collection as moot and barred by sovereign immunity; and (3) dismiss any remaining requests for declaratory and injunctive relief for lack of standing. Should the

---

[2] AAER named Mr. James B. Milliken, in his official capacity, as a Defendant in this matter due to his role as the Chancellor of the University of Texas System. (ECF 1, ¶ 16). Mr. Milliken has since left UT Austin, and Dr. Zerwas is the University of Texas System's Chancellor. Pursuant to Federal Rule of Civil Procedure 25(d), Dr. Zerwas, in his official capacity, is automatically substituted for Mr. Milliken.

Court grant this motion, AAER's only remaining claim would be its Title VI claim against UT Austin for nominal damages.

## II. FACTUAL BACKGROUND

### A. UT Austin Is a Leading Research University.

UT Austin is one of the world's leading research universities and encourages its students and faculty to participate in research projects across a variety of disciplines.[3] UT Austin's research goals include advancing science, devising solutions to global problems, addressing critical social issues, and improving the human condition.[4] As an institution, UT Austin supports its investigators, enabling them to pursue their desired studies and sharing their work with the public.[5]

### B. The NSF Funds the UT Study and Then Terminates the Award.

Dr. Madkins and Dr. Irizarry are part of a collaborative research project spanning six higher education institutions to use mosaic ethnography to better understand the differing ethnic, geographical, and cultural identities that may inform self-identifying Black undergraduates' experiences within STEM fields (the "Joint Research Project").[6] As part of the Joint Research Project, Dr. Madkins and Dr. Irizarry submitted a grant application to the NSF requesting funding to conduct research in Texas examining the ways differing ethnic, geographical, and cultural identities may inform Black undergraduates' experiences in STEM education—i.e., the UT Study.[7]

On August 23, 2022, the NSF awarded funds to UT Austin to conduct the UT Study, and work on the UT Study began on or about September 1, 2022.[8] Dr. Madkins serves as the Principal Investigator for the Award, and Dr. Irizarry serves as the Co-Principal Investigator.[9]

---

[3] *See Overview of Research at UT Austin*, THE UNIV. OF TEX. AT AUSTIN, https://www.utexas.edu/research/overview (last visited Aug. 24, 2025).
[4] *Id.*
[5] *Id.*
[6] *See* ECF 1, ¶¶ 19, 22–23; Exhibit A, ¶ 4 (Declaration of Dr. Tia C. Madkins).
[7] *See* Exhibit A, ¶ 5.
[8] Exhibit A, ¶ 5.
[9] ECF 1, ¶¶ 17–18; Exhibit A, ¶ 5.

To collect data for the UT Study, Dr. Madkins and Dr. Irizarry invited undergraduate students who were enrolled at Texas universities, identified as Black, and were in a STEM field to participate in a focus group.[10] To be considered for a focus group, students filled out a brief online eligibility survey stating whether they fit these characteristics.[11] In exchange for their participation in a focus group, the students were given a $40 gift card, which was funded by the NSF's Award.[12] As of April 12, 2025, Dr. Madkins and Dr. Irizarry had gathered data from 123 Black STEM students attending Texas universities.[13]

However, on April 18, 2025, the NSF terminated the Award, effective immediately.[14] According to the NSF, the Award was terminated because it was not in alignment with current NSF priorities, and the termination is final and not subject to appeal.[15]

As a result of the NSF's termination of the Award, Dr. Madkins and Dr. Irizarry stopped reviewing completed or soliciting new eligibility surveys for the focus groups and stopped conducting focus groups in connection with the UT Study.[16] Further, Dr. Madkins, as Principal Investigator, has declared that neither she, nor Dr. Irizarry, nor their colleagues will conduct any additional focus groups in connection with the UT Study.[17] With no further eligibility surveys or focus groups contemplated, Dr. Madkins and Dr. Irizarry are now in the process of writing and publishing scholarly articles and related research materials based on the data that was collected prior to termination of the Award.[18]

---

[10] *See* ECF 1, ¶¶ 25–26; Exhibit A, ¶ 6.
[11] *See* ECF 1, ¶¶ 26–28; Exhibit A, ¶ 6.
[12] *See* ECF 1, ¶ 26; Exhibit A, ¶¶ 6–7.
[13] Exhibit A, ¶ 8.
[14] Exhibit A, ¶ 7.
[15] Exhibit A, ¶ 7.
[16] Exhibit A, ¶ 7.
[17] Exhibit A, ¶ 8.
[18] *See* Exhibit A, ¶¶ 8–9.

### C. AAER Brings Suit, Alleging an Unidentified Member Was Barred from Participating in a UT Study Focus Group.

On April 21, 2025, AAER brought the instant suit.[19] According to AAER, unidentified Member A attempted to sign up for one of the UT Study's focus groups but was rejected because he did not identify as Black.[20]

AAER alleges that by excluding Member A from participating in a focus group in exchange for a $40 gift card, Defendants violated the Equal Protection Clause, 42 U.S.C. § 1981, and Title VI.[21] As a remedy for these alleged violations, AAER seeks declaratory and injunctive relief and nominal damages.[22]

## III. STANDARD OF REVIEW

Sovereign immunity, mootness, and standing are jurisdictional issues subject to dismissal under Rule 12(b)(1). *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) (sovereign immunity); *Shemwell v. City of McKinney*, 63 F.4th 480, 483 (5th Cir. 2023) (mootness); *Burnett Specialists v. Cowen*, 140 F.4th 686, 693 (5th Cir. 2025) (standing). In ruling on a Rule 12(b)(1) motion, courts consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218 (5th Cir. 2018) (per curiam). The Court may examine matters outside the pleadings "if the material is pertinent to the question of the District Court's jurisdiction since it is always the obligation of a federal court to determine if it has jurisdiction." *Holmes v. Drug Enf't Admin.*, 512 F. Supp. 2d 826, 835 (W.D. Tex. 2007) (quoting *Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979)); *see also Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263–64 (5th Cir. 2020) (per curiam) (noting courts may consider matters outside the pleadings when evaluating the existence of

---

19 ECF 1.
20 ECF 1, ¶ 32–37.
21 ECF 1, ¶¶ 5, 41–69.
22 ECF 1, p. 19. Plaintiff also seeks reasonable costs and attorneys' fees.

subject matter jurisdiction in fact). The plaintiff, as the party asserting jurisdiction, bears the burden of proving jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## IV. ARGUMENTS AND AUTHORITIES

AAER seeks the following relief: (1) a declaratory judgment that Defendants' administration of the Joint Research Project at UT Austin violates the Fourteenth Amendment, Title VI, and § 1981; (2) a permanent injunction requiring Defendants to administer the UT Study, "including any offers to contact with students to complete surveys or focus groups, without regard to race"; (3) a permanent injunction requiring Defendants to "undo the effects of their discrimination" by "reopening application processes, redoing surveys and focus groups, and other similar relief"; and (4) nominal damages of $1 against UT Austin.[23] For the reasons discussed below, AAER's only request for relief that is not subject to dismissal at this stage in the proceedings is AAER's request for nominal damages under Title VI against UT Austin.

Specifically, AAER's Equal Protection and § 1981 claims and corresponding requests for relief against the UT System Officials are barred by sovereign immunity, as is AAER's § 1981 claim against UT Austin. Further, AAER's Equal Protection, § 1981, and Title VI claims seeking declaratory relief that "Defendants' administration" of the Joint Research Project at UT Austin is unlawful and an injunction requiring Defendants to conduct additional surveys and focuses groups "without regard to race" are moot as the alleged discriminatory conduct is not ongoing. Lastly, AAER lacks standing to seek declaratory or injunctive relief outside of the challenged data collection or to seek an injunction "requiring Defendants to undo the effects of their discrimination" by forcing the investigators to conduct additional data collection.

[23] ECF 1, p. 19.

### A. Sovereign Immunity Bars AAER's Claims Against the UT System Officials and the § 1981 Claim Against UT Austin.

In this suit, AAER asserts an Equal Protection claim against the UT System Officials under § 1983, as well as a separate § 1981 claim.[24] Both claims against the UT System Officials, as well as the § 1981 claim against UT Austin, are barred by sovereign immunity and subject to dismissal pursuant to Rule 12(b)(1).

Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Sovereign immunity bars private suits against nonconsenting states in federal court absent Congressional abrogation, and the state's sovereign immunity extends to suits against state officials or agencies where, as here, they are effectively suits against a state. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citations omitted). Furthermore, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983," which does not waive the state's sovereign immunity. *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citation omitted). Similarly, "Section 1981 does not waive a state's Eleventh Amendment immunity." *Moore v. Univ. of Miss. Med Ctr.*, 719 F. App'x 381, 388 (5th Cir. 2018) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A 1981)).

---

[24] ECF 1, ¶¶ 41–64. Regarding the § 1981 claim, AAER pled this claim as though it is an independent cause of action (not required to be brought pursuant to § 1983). *See* ECF 1, ¶¶ 57–64. AAER cites to *American Alliance for Equal Rights v. Founder's First Community Development Corp.*, No. 4:24-CV-00327, 2024 WL 3625684 (N.D. Tex. July 31, 2024), seemingly to support that § 1981 acts as an independent cause of action. *See* (ECF 1, ¶ 58). However, *Founder's First* did not address whether a party could bring an independent cause of action against a state actor in his official capacity under § 1981. *See* 2024 WL 3625684, at *1–5. Fifth Circuit authority indicates § 1981 claims against state actors in their official capacity must be brought via § 1983. *See Escamila v. Elliott*, 816 F. App'x 919, 924 (5th Cir. 2020) (per curiam); *Patel v. Midland Mem'l. Hosp. & Med. Ctr.*, 298 F.3d 333, n.16 (5th Cir. 2002). As AAER alleged its § 1981 claim independently, and not pursuant to § 1983, the Court could dismiss this cause of action for failure to state a claim. *See Escamila*, 816 F. App'x at 922–23 (noting courts have dismissed § 1981 claims against local government actors when the complaint does not "clearly and expressly also allege § 1981's requisite linkage with § 1983 by citing to § 1983" and collecting cases). However, in keeping with the Fifth Circuit's recent hesitation to dismiss § 1981 claims based on a "formalistic" pleading approach—and solely for purposes of the instant motion—Defendants will proceed as though AAER properly cited § 1983 in connection with its § 1981 claim. *See id.* at 923–24.

AAER seeks to circumvent the UT System Officials' sovereign immunity by application of *Ex parte Young*, in which the Supreme Court created a narrow exception to sovereign immunity permitting official-capacity suits seeking prospective injunctive relief against state officers. 209 U.S. 123, 157 (1908). "For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin*, 943 F.3d at 997 (quoting *Young*, 209 U.S. at 157); *see also In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) ("*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient 'connection' to enforcing an allegedly unconstitutional law."). If there is no such connection to enforcement, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.* (citations omitted).

The *Ex parte Young* exception does not apply to state agencies. *See City of Austin*, 943 F.3d at 1003–04. "The University of Texas at Austin is inarguably a state agency." *Sissom v. Univ. of Tex. High Sch.*, 927 F.3d 343, 348 (5th Cir. 2019) (citation modified).

Here, Plaintiff has named as Defendants the UT System Chancellor and the UT System Board of Regents in their official capacities (along with UT Austin and its officials in their official capacities)[25] and asserted claims against the UT System Officials under § 1983 and § 1981. Since neither statute contains a waiver of sovereign immunity and since Texas has not consented to such claims, AAER must establish a sufficient connection between the UT System Officials' enforcement of, or control over, the alleged discriminatory data collection in the UT Study to waive the UT System Officials' sovereign immunity under *Ex parte Young*. However, Plaintiff has not and cannot do so.

The only connection Plaintiff asserts between the UT System Chancellor and the alleged

---

[25] For purposes of this motion, Defendants do not challenge the naming of President Davis, Dr. Madkins, and Dr. Irizarry, in their official capacities, as defendants under *Ex parte Young*, but Defendants reserve all defenses to such claims.

discriminatory data collection is a single, vague allegation that the Chancellor "is responsible for all aspects of the University of Texas System's operations, including oversight and implementation of the challenged program."[26] Similarly, the only connection Plaintiff asserts between the nine UT System Regents and the alleged discriminatory data collection is a single vague allegation that the UT System Board of Regents is "responsible for the adoption and authorization of policies that govern students at the University and for the administration of university programs, including the challenged program."[27] Such vague allegations are insufficient to establish the requisite connection between the UT System Officials and enforcement or control over the data collection at issue here. *See Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018) (per curiam) ("[The plaintiff's] complaint fails to allege a connection between the Louisiana Governor and the local sheriff and police officers he accuses of having violated his rights.").

Further, the UT System Regents Rules governing the Chancellor and the Board of Regents address only executive-level duties and responsibilities and do not impose any responsibility for oversight of individual research projects by faculty members across the System's thirteen institutions.[28] Indeed, the Regents Rule establishing the duties and responsibilities of the Chancellor does not mention research at all.[29] On the other hand, the Regents Rules make it clear that UT System "[f]aculty members are entitled to full freedom in research and in the publication of the results."[30] Moreover, the President of UT Austin is responsible for "[d]evelop[ing] and administer[ing] the rules and

---

[26] ECF 1, ¶ 16.
[27] ECF 1, ¶ 15.
[28] *See* UT System Regents Rule 10101: Board Authority and Duties § 4.1, https://www.utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/10101.pdf; UT System Regents Rule 20101: Chancellor § 4, https://utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/20101.pdf.
[29] UT System Regents Rule 20101: Chancellor § 4. Similarly, the Regents Rule establishing the authority and duties of the Board of Regents only requires individual Regents to be "generally knowledgeable" regarding the research programs of the UT System. UT System Regents Rule 10101: Board Authority and Duties § 4.1.
[30] UT System Regents Rule 31004: Rights and Responsibilities of Faculty Members, § 1, https://www.utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/31004.pdf.

regulations for the governance of the institution," not the Chancellor or the Board of Regents.[31] Individual research projects at UT Austin that involve human-subjects research, such as the UT Study at issue in this case, are governed by UT Austin's Institutional Review Board ("IRB") Policies. These policies state UT Austin's President has designated UT Austin's Vice President for Research, Scholarship and Creative Endeavors as the person responsible for the general oversight of human subjects research.[32] There is no mention of the Chancellor or the Board of Regents in UT Austin's IRB Policies, and there is no support for any purported connection between the UT System Officials and enforcement of, or control over, the alleged discriminatory data collection in the UT Study at issue in this case.

Defendants anticipate that AAER will cite to *Jackson v. Wright* to support their claims against the UT System Officials, but *Jackson* is inapplicable here. 82 F.4th 362 (5th Cir. 2023). In that case, a professor at The University of North Texas ("UNT") sued eight members of the UNT System Board of Regents under *Ex parte Young* and alleged First Amendment retaliation based on actions taken directly by the UNT System Provost regarding the professor's control of a university-published journal founded and run by the professor. *Id* at 365. The court held that the UNT Board of Regents had sufficient enforcement authority over the alleged unlawful conduct due to the Board defendants' "direct governing authority over the UNT officials that are allegedly continuing to violate Jackson's First Amendment rights, including authority to countermand the decisions of the subordinate UNT officials." *Id.* at 368.

No such connection exists in this case, as the UT System Board of Regents and Chancellor have no direct governing authority over the UT Austin faculty members conducting the research at issue and, by operation of their own rules, they have no authority to "countermand" the faculty

---

[31] *See* UT System Regents Rule 20201: President, § 4.9, https://www.utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/20201.pdf.
[32] UT Austin IRB Policies § 1.3, https://research.utexas.edu/resources/human-subjects/policies-and-guidance.

members' "full freedom in research and in the publication of the results."[33] Accordingly, the UT System Officials are protected by sovereign immunity from Plaintiff's claims and should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

Additionally, as § 1981 does not waive Eleventh Amendment immunity, UT Austin is a state agency, and *Ex parte Young* does not apply to state agencies, AAER's § 1981 claim against UT Austin is likewise barred by sovereign immunity. *See Moore*, 719 F. App'x at 388; *City of Austin*, 943 F.3d at 1003–04; *Sissom*, 927 F.3d at 348. Thus, the Court should also dismiss AAER's § 1981 claim against UT Austin for lack of subject matter jurisdiction.

**B. The AAER's Claims for Prospective Declaratory and Injunctive Relief Are Moot.**

Further, the UT System Officials, along with President Davis, Dr. Madkins, and Dr. Irizarry, should be dismissed from this action because AAER's Equal Protection, § 1981, and Title VI claims seeking relief based on the now-terminated eligibility surveys and focus groups are moot.

Under Article III of the Constitution, a court's jurisdiction is limited to live cases and controversies, and a live controversy must exist at all stages of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 831 (5th Cir. 2023). Even if a plaintiff sufficiently alleges an injury to invoke jurisdiction, the plaintiff loses the ability to maintain his claim if circumstances arise that render the action or claim moot. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424–25 (5th Cir. 2013). A case is moot "when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Id.* (citations omitted).

There are three exceptions to the mootness doctrine: (1) the capable-of-repetition exception; (2) the voluntary-cessation exception; and (3) the collateral-consequences exception. *See Tex. Office of*

[33] UT System Regents Rule 31004: Rights and Responsibilities of Faculty Members, § 1, https://www.utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/31004.pdf.

*Pub. Util. Couns. v. FCC*, 183 F.3d 393, 414 n.17 (5th Cir. 1999). The capable-of-repetition exception only applies if the plaintiff demonstrates: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Lopez v. City of Hous.*, 617 F.3d 336, 340 (5th Cir. 2010) (citation omitted). This exception's second prong requires the plaintiff to show a demonstrated probability or reasonable expectation—more than a theoretical possibility—that it will be subject to the *same* allegedly discriminatory action. *See id.* The voluntary-cessation exception applies when a defendant ends its allegedly unlawful conduct once sued, unless the defendant makes it clear that the alleged wrongful behavior could not reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–92 (2013). Lastly, the collateral-consequences exception applies only when the allegedly discriminatory conduct may cause continuing harm, and judicial relief is capable of preventing such harm. *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998).[34]

If a claim is moot, and none of these exceptions apply, the claim must be dismissed. *See Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (noting courts cannot give opinions on abstract propositions or moot questions).

AAER seeks, among other things, a declaratory judgment that "Defendant's administration" of the Joint Research Project violates the law; a permanent injunction requiring Defendants to "administer" the UT Study without regard to race; and a permanent injunction requiring Defendants to "undo the effects" of their discrimination by forcing the investigators to reopen data collection.[35] However, the NSF's termination of the Award constitutes an intervening circumstance rendering the Court unable to provide AAER with its requested injunctive and declaratory relief, these claims for relief are moot. *See Ctr. for Biological Diversity, Inc.*, 704 F.3d at 424–25.

---

[34] While courts have applied the collateral-consequences exceptions in the civil context, this exception is generally used to allow review of expired criminal sentences. *Id.*
[35] ECF 1, p. 19.

AAER's complaint contemplates that the complained-of conduct of limiting focus group participants to Black STEM students is ongoing.[36] However, the NSF terminated the Award's funding, thereby ending all funding for the UT Study, and Dr. Madkins and Dr. Irizarry are not sending additional eligibility surveys or holding additional focus groups related to the UT Study.[37] Dr. Madkins has declared, under penalty of perjury, that due to the termination of the Award, neither she nor her colleagues at UT Austin will "be conducting any further focus groups, either from Black STEM students or from any other students, in connection with the UT Study."[38] Because the alleged discriminatory conduct has ceased, there is no longer a live case or controversy that would justify AAER's claims for declaratory and injunctive relief based on the now-terminated eligibility surveys and focus groups.

Specifically, AAER's request for a declaratory judgment that Defendants' administration of the Joint Research Project at UT Austin is unlawful is moot because Dr. Madkins and Dr. Irizarry are no longer conducting the cited data collection and will not engage in such conduct in the future, as the complained-of eligibility surveys and related focus groups relied on by AAER have ended.[39] Moreover, AAER does not identify any other alleged misconduct by UT Austin or the individual investigators in the purported "administration" of the Joint Research Project at UT Austin. Accordingly, the request for declaratory relief addresses past conduct—not future or ongoing conduct—meaning the requested declaratory relief is an improper request for retrospective relief. *See Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 196–97 (5th Cir. 2023) (noting past exposure to purportedly illegal conduct, standing alone, does not evince a present case or controversy that would

---

[36] ECF 1.
[37] *See* Exhibit A, ¶ 8.
[38] Exhibit A, ¶ 8.
[39] To the extent AAER seeks to address the administration of the UT Study as a whole in his request for declaratory or injunctive relief, rather than just the complained-of data collection, AAER lacks standing to bring those claims. *Infra* § IV(C).

justify declaratory relief); *Haggard v. Bank of the Ozarks*, 547 F. App'x 616, 620 (5th Cir. 2013) (per curiam) (noting the purpose of declaratory relief is to define future legal rights and obligations, not proclaim liability for a past act); *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425–26 (5th Cir. 2020) (finding district court lacked jurisdiction to issue a declaratory judgment stating that past conduct violated the law in suit against government officials in their official capacity).

The same is true for AAER's requested injunctive relief requiring Defendants to administer the UT Study, "including any offers to contract with students to complete surveys or focus groups, without regard to race." Because Dr. Madkins and Dr. Irizarry are no longer engaging in the eligibility surveys and focus groups, AAER has already received the requested relief. *See Amawi v. Paxton*, 956 F.3d 816, 821–22 (5th Cir. 2020) (finding claims moot where revisions to the challenged law provided plaintiffs "the very relief their lawsuit sought"). The Court "simply cannot enjoin that which has already taken place." *Harris v. City of Hous.*, 151 F.3d 186, 189 (5th Cir. 1998) (citation omitted).

Similarly, AAER's request for an injunction to "undo the effects of [Defendants'] discrimination" by "reopening application processes, redoing surveys and focus groups" seeks to remedy past conduct, rather than prevent ongoing harm. Such relief is outside of the scope of available prospective relief under *Ex parte Young* and would constitute a violation of Defendants' sovereign immunity. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."); *United States v. Abbott*, 85 F.4th 328, 336 (5th Cir. 2023) ("Relief against the Governor's issuance of the order is purely retrospective, plainly falls outside the bounds of *Ex parte Young*, and hence is barred by the State's sovereign immunity"); *Rowan Court Subdivision 2013 Ltd. P'ship v. La. Housing Corp.*, 749 F. App'x 234, 238 (5th Cir. 2018) (holding injunction ordering Louisiana Housing Corporation to reallocate low income housing credits would constitute improper retrospective relief); *Gean v. Hattawway*, 330 F.3d 758, 776 (6th Cir. 2003) ("Their complaint is, however, based entirely upon past acts and not continuing

conduct that, if stopped, would provide a remedy to them, and it therefore does not come under the doctrine of *Ex Parte Young*).[40] Accordingly, AAER's claims seeking declaratory and injunctive relief are moot.

Further, none of the exceptions to the mootness doctrine apply. First, as to the capable-of repetition-exception, the NSF's final termination of the Award has halted the complained-of data collection in the UT Study and prevents Dr. Madkins, Dr. Irizarry, and UT Austin generally, from repeating the conduct at issue. Further, due to the NSF's termination, Dr. Madkins and her colleagues are no longer holding focus groups related to the Award.[41] Accordingly, AAER has not demonstrated a reasonable expectation or a probability that Member A—or any other AAER members—will be subject to the same alleged misconduct. *See Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1020 (8th Cir. 2025) (finding claim moot and not capable of repetition where the appropriated funds providing for the allegedly improper conduct had been spent and the policy providing for the funds was not subject to renewal).

Second, the voluntary-cessation exception does not apply as Defendants did not voluntarily cease the complained-of conduct because of litigation. Rather, the NSF—an outside federal entity—terminated the Award, preventing Defendants from continuing to conduct the focus groups in support of the UT Study.[42] Further, the NSF terminated the Award on April 18, 2025—before AAER brought suit—meaning the cessation of the challenged conduct was not a result of litigation or as a form of litigation posturing. *See U.S. Navy Seals v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023) (noting the voluntary-cessation doctrine evaluates whether a defendant is engaging in litigation posturing to avoid a court's review).[43] Further, even if Defendants voluntarily had ceased the complained-of conduct

---

[40] *See also infra* § IV(C).
[41] Exhibit A, ¶ 8.
[42] *See* Exhibit A, ¶¶ 7–8.
[43] *See* ECF 1; Exhibit A, ¶¶ 6–7.

(which they did not), the NSF's termination of the Award removes the necessary funding to support any re-opening of data collection portion for the UT Study.[44] Accordingly, the voluntary cessation exception does not apply. *See Twin Cities Safety*, 139 F.4th at 1020 (finding voluntary cessation exception inapplicable where allegedly improper conduct stopped due to a lack of appropriated funding, and defendants were not responsible for new appropriations bills funding the challenged conduct).

Lastly, the collateral-consequences exception to mootness does not apply because there is no continuing harm stemming from the complained-of conduct that judicial relief could prevent. *See Dailey*, 141 F.3d at 227.

Accordingly, AAER's claims for declaratory and injunctive relief based on the eligibility surveys and the focus groups are moot, and this Court lacks jurisdiction over AAER's related Equal Protection and § 1981 claims. Because AAER only brings Equal Protection and § 1981 claims against President Davis, Dr. Madkins, Dr. Irizarry (and the UT System Officials), these parties must be dismissed.

**C. AAER Lacks Standing for Any Remaining Claims for Declaratory and Injunctive Relief.**

To the extent AAER is seeking declaratory or injunctive relief under the Equal Protection Clause, § 1981, or Title VI that extends beyond the complained-of eligibility surveys and focus groups, the Court should dismiss these claims for lack of standing.

Article III of the Constitution grants federal courts the authority to resolve only cases or controversies. *Reule v. Jackson*, 114 F.4th 360, 366 (5th Cir. 2024). One of the landmarks identifying cases or controversies, which are subject to judicial resolution, is standing. *Id.* A plaintiff must demonstrate standing for each claim he alleges and each form of relief that he seeks. *Id.*

To establish standing, a plaintiff must prove "(1) that it has suffered or likely will suffer an

---

[44] *See* Exhibit A, ¶¶ 6–8.

injury in fact; (2) that the injury likely was caused or will be caused by the defendant; and (3) that the injury likely would be redressed by the requested judicial relief." *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 803–04 (5th Cir. 2025) (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)). When an association is bringing a claim on behalf of one of its members, the association must be able to show that the individual member has standing to bring the suit. *See id.* at 804.

To establish an injury in fact, the plaintiff must show that he suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 938 F.3d 533, 537 (5th Cir. 2019) (citation modified). The injury must be personal to the plaintiff—in other words, the plaintiff must establish a personal stake in the dispute and show that the alleged injury is particularized to them. *Donelon v. La. Div. of Admin. Law*, 522 F.3d 564, 566 (5th Cir. 2008). "To request prospective injunctive or declaratory relief, a litigant must demonstrate continuing harm or a real and immediate threat of repeated injury in the future." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (citation omitted). Allegations of possible future injury will not suffice. *Id.* Similarly, to establish the redressability element of standing, a plaintiff must show that it is likely, not merely speculative, that his alleged injury will be redressed by a favorable decision. *Reule*, 114 F.4th at 368.

### 1. Any Relief Beyond the Complained-Of Data Collection Would Not Redress a Concrete or Particularized Injury.

AAER's complaint alleges an injury due to Member A's exclusion from the eligibility survey and focus groups in the UT Study.[45] As stated above, AAER's requests for declaratory and injunctive relief related to the eligibility surveys and focus groups are moot.[46] However, AAER's prayer for relief goes beyond the data collection in the UT Study and asks the Court for declaratory and injunctive relief regarding the Joint Research Project as a whole. Specifically, AAER requests a declaratory

---

[45] ECF 1, ¶¶ 29–40

[46] *Supra* § IV(B)

judgment that "Defendants' administration" of the Joint Research Project "violates the law."[47] However, AAER has not established that it has standing to seek such relief.

To the extent AAER's requested declaratory relief would require the Court to condemn, stop, or otherwise inhibit the Joint Research Project or the UT Study beyond the complained-of data collection, AAER has not asserted a concrete, personal injury that the requested relief would redress. Indeed, the only alleged injury is Member A's exclusion from the focus groups conducted as part of the UT Study.[48] AAER does not argue that the administration of the Joint Research Project or the UT Study (outside of the complained-of data collection) is causing Member A a concrete, non-speculative injury. Similarly, AAER does not allege how any other actions by the UT Austin investigators—such as the publication of scholarly articles based on analysis of the previously-collected data[49]—will pose a concrete injury to Member A in the future.[50] Accordingly, AAER lacks standing for its requested declaratory and injunctive relief relating to the administration of the Joint Research Project, generally, or any aspect of the UT Study beyond the prior data collection. *See Parr v. Cougle*, 127 F.4th 967, 975 (5th Cir. 2025) ("[R]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.") (quoting *Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 107 (1998)).

**2. AAER's Request for New Data Collection Exceeds the Scope of Available Relief.**

Further, AAER's request for an injunction requiring Defendants to "undo the effects of their discrimination" by "reopening the application process, [and] redoing surveys and focus groups" to include non-Black students is improper for the additional reason that it violates principles of academic freedom.[51] Even assuming there is some ongoing harm stemming from the complained-of eligibility

[47] ECF 1, p. 19.
[48] *See* ECF 1, ¶¶ 29–40.
[49] *See* Exhibit A, ¶ 9.
[50] *See* ECF 1.
[51] *See* ECF 1, p. 19 (requesting that the application process be reopened, surveys and focus groups be redone, and "other similar relief")

surveys and focus groups (which there is not) or that AAER's request for injunctive relief "undoing" the prior allegedly discriminatory acts could be proper prospective relief under *Ex parte Young* (which it cannot), the Court cannot order Dr. Madkins and Dr. Irizarry to re-open the eligibility surveys and focus groups, nor may the Court dictate the standards for publishing the results of the UT Study. Such orders would intrude on constitutionally protected academic freedom.

"Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and . . . a special concern of the First Amendment[.]" *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967); *see also Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019) (recognizing that academic freedom is a concern of the First Amendment).[52] Universities and professors must be free to inquire, study, and evaluate. *See Coal. for Ind. Tech. Rsch.*, 706 F. Supp. 3d at 687. Thus, academic freedom receives extra protection under the First Amendment. *Id.*

While lacking precisely defined boundaries, scholarship has been recognized as the core of "academic freedom." *See Garcetti v. Ceballos*, 547 U.S. 410 (2006) (noting that cases "involving speech related to scholarship or teaching" may implicate additional constitutional interests not addressed in that case); *Meriwether v. Hartop*, 992 F.3d 492, 505 (6th Cir. 2021) (recognizing that academic freedom applies to "core academic functions, such as teaching and scholarship.").[53] Decisions about what research projects to pursue—and with whom to pursue this research—are protected by the First Amendment. *See Shott v. Katz*, 829 F.3d 494, 497–98 (7th Cir. 2016); *see also Dow Chem. Co.*, 672 F.2d at 1275 (noting that academic inquiries *must* be left as unfettered as possible and the danger of chilling the exercise of First Amendment rights must be guarded against).

---

[52] *Coal. For Ind. Tech. Rsch. v. Abbott*, 706 F. Supp. 3d 673, 686 (W.D. Tex. 2023) (noting academics and public employees have extra protection under the First Amendment); *Vance v. Bd. of Supervisors of S. Univ.*, No. 96-2196, 1996 WL 580905, at *2 (E.D. La. Oct. 9, 1996) (noting "ample precedent for considering academic freedom within the ambit of the First Amendment"); *Local 8027 v. Edelblut*, 651 F. Supp. 3d 444, 451–52 (N.H.D. 2023) (collecting cases).

[53] As caselaw addressing academic freedom's contours is "surprisingly sparse[,]" Defendants rely on cases from outside of the Fifth Circuit. *See Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982).

Thus, if the Court were to force UT Austin and its faculty to engage in research they do not intend to conduct and reopen the focus groups (which have ended) to gather data they do not intend to use, such action would be equivalent to compelled speech in violation of the First Amendment.[54] Further, even if the Court were to order Dr. Madkins and Dr. Irizarry to re-open the eligibility surveys and focus groups, the Court lacks the authority to require Defendants to use any of the data from the new focus groups in any scholarly work they may ultimately publish, as this too would be compelled speech. *See Meriwether*, 992 F.3d at 505, 509–10 (noting damage imposed by compelled speech on matters of public concern and finding that interest in stopping discrimination did not justify limiting professor's freedom of speech in the classroom); *303 Creative LLC*, 600 U.S. at 586–87 (noting limits on compelling a person to include ideas within his speech that he would prefer not to include). Finally, such actions would be a waste of state resources, particularly given that the NSF has terminated the Award supporting the UT Study and the complained-of data collection.

Accordingly, an order requiring "Defendants to undo the effects of their discrimination"[55] by forcing Dr. Madkins's and Dr. Irizarry to re-open the focus groups and dictating the parameters of their research would intrude on academic freedom and be unconstitutional. As the Court cannot provide AAER with any meaningful relief as to its requests for declaratory and injunctive relief, these claims lack redressability by the Court. Accordingly, AAER lacks standing for those claims.

## V. CONCLUSION

For the reasons above, Defendants respectfully request that the Court grant this motion and allow this case to proceed solely on AAER's claim seeking nominal damages from UT Austin.

---

[54] *See* ECF 1, p. 19. Further, courts (albeit in the subpoena context) have found that academics' research is subject to protection from unwanted disclosure. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998) (finding that the First Amendment grants academics engaged in scholarly research protection from disclosure of pre-publication research); *Dow Chem. Co.*, 672 F.2d at 1274–77 (finding academic freedom was a factor in finding request for disclosure of university's research unreasonable). If a court's authority is limited in requiring disclosure of data, it follows that a court's authority to order additional data collection unnecessary for the professor's studies is likewise limited.

[55] ECF 1, p. 19.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Darren G. Gibson*
Darren G. Gibson
State Bar No. 24068846
Darren.Gibson@michaelbest.com
Madison George Dornak
State Bar No. 24108751
Madison.Dornak@michaelbest.com

MICHAEL BEST & FRIEDRICH LLP
515 Congress Avenue, Suite 2500
Austin, Texas 78701
Telephone: 512.320.0601
Facsimile: 512.640.3170

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, a copy of the foregoing document has been electronically filed with the Court, and served on the following by CM/ECF, causing electronic service upon all counsel of record.

/s/ *Darren G. Gibson*
Darren G. Gibson